UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FARZAD S.,[1]

Petitioner,

v.

WARDEN OF GOLDEN STATE ANNEX, et al.,

Respondents.

No. 1:26-cv-07968-TLN-JDP

A# 073-415-934

**RELEASE ORDER**

This matter is before the Court on Petitioner Farzad S.'s ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"). (ECF No. 1.) Respondents filed a response. (ECF No. 7.) Petitioner, through appointed counsel, filed a reply. (ECF No. 11.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner is a noncitizen who entered the United States in 1995 pursuant to a B2 visitor visa and has resided in the United States since. (ECF No. 1 at 2; ECF No. 7 at 7.) Petitioner encountered Immigration and Customs Enforcement ("ICE") in 2007 and was placed in the Intensive Supervision Appearance Program ("ISAP") and later placed on a $25,000 bond. (ECF No. 1 at 2; ECF No. 7 at 7.) Over the last thirty-one years, Petitioner has married twice, both times to a U.S. citizen, and he has four U.S. citizen children. (ECF No. 7 at 6.) Petitioner has been convicted of criminal offenses starting in 2004, with his most serious set of convictions including assault with a deadly non-firearm weapon, threatening a crime, carrying a loaded handgun without registration, and battery in 2022. (*Id.* at 15–31.)

An immigration judge issued a final order of removal against Petitioner in 2011 and simultaneously granted Petitioner's application for withholding of removal to Iran. (*Id.* at 10.) Neither party argues Petitioner appealed the order of removal. (*See* ECF Nos. 1, 2, 7, 11.) Immigration authorities did not execute the order.

More than fourteen years later, on May 15, 2026, Petitioner was arrested by ICE agents upon his release from a local jail. (ECF No. 1 at 2; ECF No. 7 at 7.) Respondents have reopened Petitioner's immigration court proceedings for the sole purpose of seeking to terminate the withholding of Petitioner's removal to Iran.[2] (ECF No. 7 at 3, 39–45.) Respondents also appear to contemplate third-country removal to an unspecified "destination country." (*Id.* at 3.)

Petitioner has now been detained for over six months. He is currently detained at the Golden State Annex in this District. (ECF No. 1 at 2.) Petitioner alleges his civil immigration detention is unconstitutional and in violation of the Immigration and Nationality Act, related

---

[2] The government appears to seek to terminate Petitioner's grant of withholding on the basis that his conviction for assault with a deadly weapon is a particularly serious crime that makes him a danger to the community of the United States under applicable law. (ECF No. 7 at 43–44.) However, as Petitioner correctly notes, the government's ability to terminate withholding of removal is speculative as the government admits this conviction is not an aggravated felony and an immigration judge would have to exercise discretion to find it qualifies as a particularly serious crime warranting termination of withholding. (*Id.*; ECF No. 11 at 8.)

regulations, and the Administrative Procedure Act and seeks immediate release. (*Id.* at 9–12.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner argues Respondents violated his procedural due process rights in detaining him without providing sufficient notice of the reasons for revocation of his release or an opportunity to respond. (ECF No. 1 at 9–11.) He also claims Respondents are violating his substantive due process rights by continuing to detain him without establishing a significant likelihood he will be removed in the reasonably foreseeable future.[3] (*Id.* at 11.) Respondents argue 8 U.S.C. § 1231(a)(6) mandates Petitioner's detention because he is subject to a final order of removal.[4] (ECF No. 7 at 2.) Regarding Petitioner's *Zadvydas* claim, Respondents contend Petitioner's approximately five months in detention at the time of Respondents' answer is presumptively reasonable and Petitioner has not demonstrated there is no significant likelihood of his removal in

---

[3] Because the Court finds Respondents' violations of applicable detention procedures and Petitioner's showing that removal is not significantly likely to occur in the reasonably foreseeable future sufficient to grant the Petition, the Court, in the interest of judicial economy, does not address Petitioner's remaining arguments.

[4] Unless otherwise specified, subsequent references to statute refer to title 8 of the United States Code.

the reasonably foreseeable future. (*Id.* at 3.) Respondents assert the government's motion to reopen Petitioner's immigration proceedings for the purpose of terminating withholding "has no impact" on Petitioner's final order of removal, which Respondents argue makes Petitioner's continued detention lawful. (*Id.*) Respondents also argue "release is not an appropriate remedy" given Petitioner's criminal history. (*Id.* at 1.)

The Court considers Petitioner's procedural due process claim and substantive due process claim in turn.

A. <u>Procedural Due Process</u>

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps. First, a court asks whether there exists a protected liberty interest under the Due Process Clause. Second, the court examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

As to the first step, the Court finds Petitioner has a protected liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025). A person's liberty interest may increase over time. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Here, Petitioner gained a protected interest in his continued liberty during his thirty-one years living in the United States. That ICE arrested and detained Petitioner immediately after he was released from criminal custody amplifies the significance of his liberty interest. (ECF No. 1 at 2; ECF No. 7 at 7.) As the *Morrissey* Court noted, an individual like Petitioner has been "released from [criminal custody] based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person." 408 U.S. at 482. Indeed, prior to his detention, Petitioner lived in the United States for thirty-one years, during which time he married and had children. (ECF No. 7 at 6.) In consideration of the amount of time Petitioner was permitted to live in this country and the life he appears to have made in that time, the Court finds Petitioner had a substantial interest in his continued freedom protected by the Fifth Amendment. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693.

The fact that Petitioner has a final order of removal does not alter this Court's analysis. As a preliminary matter, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Thus, even if ICE had discretion to arrest and detain Petitioner pursuant to the final order of removal, its exercise of that discretion must comport with due process. *See Garcia v. Andrews*, No. 1:25-cv-01006 JLT SAB, 2025 WL 2420068, at *9 (E.D. Cal. Aug. 21, 2025) (finding statutory authority to revoke bond or parole "does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

Further, Respondents are incorrect to rely on § 1231(a)(6) as the basis for Petitioner's re-detention. While Respondents acknowledge § 1231(a)(6) allows ICE to "*continue* detaining" noncitizens pending their removal (ECF No. 7 at 2 (emphasis added)), Respondents appear to argue § 1231(a)(6) permits ICE to arrest and re-detain released noncitizens without notice or process at any time after an order of removal has been final for more than ninety days (*id.* at 1–2 (asserting Petitioner was detained "to effectuate his removal order" and implicitly arguing § 1231(a)(6) governs his detention)). But § 1231(a)(6) "isn't a free-roaming right to arrest and detain people any time [ICE] sees fit[.]" *Diallo v. Joyce*, 817 F. Supp. 3d 202, 205 (S.D.N.Y. 2025). Rather, § 1231(a)(6) allows for the *continued* detention, not re-detention, of certain

noncitizens after the ninety-day removal period. *Id.* (citing *Zadvydas*, 533 U.S. at 683 ("After entry of a final removal order and during the 90–day removal period, however, [noncitizens] must be held in custody. § 1231(a)(2). Subsequently, as the post-removal-period statute provides, the Government 'may' *continue to detain* a[] [noncitizen] who remains here or release that [noncitizen] under supervision. § 1231(a)(6).") (emphasis added)). That § 1231(a)(6) applies to continued detention and not re-detention is clear by the terms of its own text, the wider statutory scheme, and relevant regulations. *Id.* at 206 (finding the "and, if released" language of § 1231(a)(6) reflects that the statute applies to individuals already in detention, the government's reading would override § 1231(a)(3), and the regulations that operationalize § 1231(a)(6) refer to "continued detention").

Instead, once the ninety-day removal period expires, if a non-citizen is not in custody, they are subject to supervision under § 1231(a)(3), not detention. *See Alva v. Kaiser*, No. 25-CV-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention."); *see also Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025) (finding that where a noncitizen's removal order "became final long ago," "he is no longer even arguably subject to mandatory detention under § 1231(a)," but is instead subject to supervision under § 1231(a)(3)).

The Court therefore rejects Respondents' argument that Petitioner can be re-detained under § 1231(a)(6) without any additional procedures, regardless of whether he was formally placed on an order of supervision. Petitioner has a liberty interest in his continued freedom protected by the Due Process Clause.

*ii. Process Required*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor — Petitioner's private interest — Petitioner has a substantial private interest in remaining free from detention. ICE released Petitioner nineteen years ago, and he has built a family in the United States. (ECF No. 1 at 2; ECF No. 7 at 6–7.) Despite this, Petitioner has now been detained for over six months without prior notice or an opportunity to respond to the reasons for revocation of his release. These facts weigh in favor of finding Petitioner's private interest has been impacted by his detention. *See Doe*, 787 F. Supp. 3d at 1094 (finding similarly).

As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here is considerable where Petitioner has received virtually no procedural safeguards. *See A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendations adopted*, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1808676, at *1 (E.D. Cal. July 1, 2025) (finding similarly). Because Petitioner has a final order of removal, the revocation of his release is governed by 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13. *Diaz*, 2025 WL 2581575, at *4. These regulations allow ICE to re-detain a noncitizen "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [non-citizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon revocation, the noncitizen must "be notified of the reasons for the revocation of his or her release" and "afforded an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(3). Neither process was followed here. *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("ICE, like any agency, 'has the duty to follow its own federal regulations.'" (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003))). As Petitioner was denied procedural safeguards to ensure his re-detention was justified, there is a serious risk he is being erroneously deprived of his liberty.

As to the third *Mathews* factor, the government's interest in detaining Petitioner without procedural safeguards is negligible. Respondents have put forth no compelling interest to support

arresting and re-detaining Petitioner without notice or an informal interview.[5] (*See* ECF No. 7.) There is no indication on the record that circumstances have changed such that Petitioner's removal to his country of citizenship or a third country is imminent. (*See id.*) Further, the cost and time of procedural safeguards are minimal. Notice and interviews are routine processes for Respondents, and any administrative burden in providing such process prior to re-detention (if justified) would be minimal, especially when compared to the high fiscal burden of detaining Petitioner. *See Hernandez*, 872 F.3d at 996 ("The costs to the public of immigration detention are 'staggering[.]'"). Therefore, the Court can find no legitimate interest for Respondents to continue detaining Petitioner.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to notice of the reasons for his re-detention and a prompt opportunity to respond to those reasons. Respondents did not provide either. Accordingly, the Court finds Respondents violated Petitioner's Fifth Amendment right to due process.

B. <u>Substantive Due Process</u>

The Court next considers whether Petitioner's detention is unconstitutionally prolonged under *Zadvydas* in light of the likelihood Petitioner will be removed in the reasonably foreseeable future. In *Zadvydas*, the United States Supreme Court considered prolonged immigration detention under § 1231(a)(6). 533 U.S. 678 (2001). The Court recognized a presumptively reasonable six-month period of detention to effect removal after an order of removal becomes final. *Id.* at 701. As with all presumptions, the *Zadvydas* presumption of reasonableness is rebuttable. "[O]nce the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." *Id.* "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable

---

[5] To the extent Respondents argue Petitioner's criminal convictions warrant his arrest and detention without process, this contention fails. (*See* ECF No. 7 at 1 (arguing release is not appropriate given Petitioner's criminal history).) As discussed further below, ICE has not previously taken steps to remove Petitioner despite his decades-long criminal history (ECF No. 7 at 15–28), and in any event, immigration detention is civil, not criminal, and should be nonpunitive in purpose and effect. *Zadvydas*, 533 U.S. at 690.

future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Respondents argue they benefit from the *Zadvydas* presumption because Petitioner has not been detained for six months. (ECF No. 7 at 3.) The Court notes that Petitioner has now been detained for over six months. Even applying *Zadvydas*'s presumption, Petitioner has sufficiently rebutted the presumption and provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Since 2011, Petitioner has been subject to a final order of removal and granted withholding as to his removal to Iran. (*Id.* at 10.) Although Respondents now purport to seek to terminate the granted withholding of removal, Respondents provide no evidence that an immigration judge will rule in Respondents' favor in the reasonably foreseeable future, if ever. (*Id.* at 39, 42–45.) The Court therefore agrees with Petitioner that the government's ability to terminate the withholding is "speculative" at this juncture. (ECF No. 11 at 8.) Moreover, while Respondents gesture at the possibility of third-country removal by arguing Petitioner has not provided evidence he would be unremovable to "a destination country," this underdeveloped third-country removal proposal falls far short of demonstrating a significant likelihood of removal in the reasonably foreseeable future. (ECF No. 7 at 3.) Thus, Petitioner has made a sufficient showing that he is not significantly likely to be removed either to Iran, with respect to which Petitioner has been granted withholding of removal, or to a third country. *See Perez Canet v. Blanche*, No. 2:26-cv-00223-APG-NJK, 2026 WL 1091763, at *3 (D. Nev. Apr. 22, 2026) (finding similarly). There is thus no evidence that Petitioner's removal to any country is reasonably foreseeable as *Zadvydas* requires for continued detention to be authorized.

On the record before this Court, Petitioner's removal to any country is not significantly likely in the reasonably foreseeable future. Therefore, his continued detention is unlawful. *Id.* at 699.

C. <u>Appropriate Relief</u>

Respondents contend without citing authority that release — Petitioner's requested relief — "is not an appropriate remedy" given his criminal history. (ECF No. 1 at 12; ECF No. 7 at 1.)

But immigration detention is not a proxy for criminal punishment. *See Zadvydas*, 533 U.S. at 690 (explaining immigration proceedings "are civil, not criminal, and we assume that they are nonpunitive in purpose and effect"). Moreover, Respondents do not point to any evidence that ICE re-detained Petitioner since his release on ISAP and bond in 2007 despite Petitioner being convicted of criminal offenses in the interim. (ECF No. 7 at 15–28.) In any event, Petitioner has paid his debt to society by serving criminal sentences and terms of probation. (ECF No. 7 at 27–31.) Given that Petitioner has served his criminal sentence and is unlikely to be removed in the reasonably foreseeable future, release is the appropriate remedy. "Habeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Hamdi*, 542 U.S. at 536); *see Preiser*, 411 U.S. at 484 ("[T]he traditional function of the writ is to secure release from illegal custody."); *Pinson v. Carvajal*, 69 F.4th 1059, 1070 (9th Cir. 2023) ("[T]he history of habeas corpus demonstrates why release from confinement is the only available remedy for claims at the writ's core[.]"). On this record, the Court finds release appropriate here.

## IV. CONCLUSION

Accordingly, the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. Further, IT IS HEREBY ORDERED:

1. Respondent must IMMEDIATELY RELEASE Petitioner Farzad S. (A# 073-415-934) from custody on an order of supervision. At the time of release, Respondent must provide a copy of this Order to Petitioner and return all of Petitioner's documents and possessions. Respondent must file a **notice of compliance** with this provision within two days of this Order.

2. Respondents are ENJOINED from re-detaining Petitioner absent a travel document to the country of removal and compliance with statutory and constitutional protections, including a minimum of seven-days' pre-deprivation notice and strict compliance with the requirements of 8 C.F.R. §§ 241.4(*l*), 241.13(i).

3. Respondents are further ENJOINED from removing Petitioner to a third country until they first provide a minimum of ten-days' notice of such intent and a meaningful opportunity for Petitioner to assert a fear-based claim for relief from removal to that country. If

Petitioner asserts a fear-based claim, Respondents must provide Petitioner a meaningful opportunity to be heard before an immigration judge prior to removal.

4. Petitioner's Petition for Temporary Restraining Order (ECF No. 2) is denied as moot.

5. The Clerk of Court is directed to serve this Order on **Golden State Annex**, enter judgment in favor of Petitioner, and close this case.

IT IS SO ORDERED.

DATE: November 19, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE